UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOLENE L. MELVILLE, | ) |
| | ) No. CV-05-302-CI |
| Plaintiff, | ) |
| | ) ORDER DENYING PLAINTIFF'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| | ) AND DIRECTING ENTRY OF |
| JO ANNE B. BARNHART, | ) JUDGMENT FOR DEFENDANT |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 12, 15) submitted for disposition without oral argument on April 10, 2006. Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Stephanie R. Martz represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 6.) After reviewing the administrative record and the briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment and directs entry of judgment for Defendant.

Plaintiff, 31-years-old at the time of the initial administrative hearing, completed high school and had past work experience as a video rental clerk, cocktail waitress, research interviewer, and banquet server. Plaintiff protectively filed an

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 1

application for Supplemental Security Income (SSI) benefits on April 11, 2002, alleging disability as of January 1, 1991, due to mental impairments. (Tr. at 16, 17.) Following a denial of benefits at the initial stage and on reconsideration, a hearing was held before Administrative Law Judge Paul Gaughen (ALJ). In February 2005, the ALJ denied benefits; review was denied by the Appeals Council. This appeal followed. Jurisdiction is proper under 42 U.S.C. § 405(g).

**ADMINISTRATIVE DECISION**

The ALJ concluded Plaintiff had not engaged in substantial gainful activity and suffered from severe impairments including anxiety and personality disorders, but those impairments did not meet the Listings. (Tr. at 25.) He found Plaintiff's testimony was not fully credible. The ALJ concluded Plaintiff had a residual capacity for a full range of work with additional limitations in social interaction, travel to unfamiliar places, performing activities on time or within a schedule, engaging in goal setting, and working where alcohol was available. Plaintiff was found to be able to learn and apply both simple and detailed instructions. (Tr. at 29.) Based on the testimony of the vocational expert, the ALJ found Plaintiff could perform other work which exists in significant numbers in the national economy including industrial cleaner, laundry worker I and II, sorter, and sewing machine operator. (Tr. at 28.)

**ISSUES**

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff contends the ALJ erred when he (1) improperly relied on

the opinion of the consulting physician; (2) failed to properly reject the opinions of the examining psychiatrists; and (3) failed to include all of Plaintiff's limitations in the hypothetical posed to the vocational expert.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

**ANALYSIS**

1. <u>Consulting Physician and Rejection of Examining Physicians' Opinions</u>

Plaintiff contends the ALJ improperly relied on the opinion of the consulting physician without providing sufficient reasons to reject the findings of the examining physicians, Drs. Pollack and Rosekrans. Defendant responds the ALJ correctly relied on Dr. Bostwick's opinion in light of the test results which suggested malingering and exaggeration.

Dr. Bostwick, in his opinion, noted objective psychological test results were not available to support Drs. Rosekrans' and Pollack's diagnoses of depression, panic disorder with agoraphobia, and obsessive compulsive disorder. Both doctors relied on MMPI-II tests which indicated exaggeration of symptoms. Dr. Bostwick also noted Plaintiff's cognitive functioning and memory were tested and found to be within normal limits. (Tr. at 291-292.) Thus,

Plaintiff's credibility was at issue; the ALJ concluded she was not fully credible and that finding has not been challenged by Plaintiff. Dr. Bostwick then noted, if the ALJ accepted the diagnoses of anxiety and personality disorders based on self-report, and excluding any alcohol and drug dependence, Plaintiff's functional limitations, for purposes of a step two analysis, included moderate limitations in activities of daily living and social interaction. (Tr. at 294.) For purposes of a step four and five analysis, Dr. Bostwick concluded Plaintiff would experience slight to moderate limitations in her ability to maintain attention and concentration for extended periods, and moderate limitations in her ability to interact with the public, get along with co-workers, travel in unfamiliar places, use public transportation, set goals or make plans independently of others. (Tr. at 296-297.)

The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). Cases have upheld rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor, but those opinions also have included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, at 831, citing *Magallanes v. Bowen,* 881 F.2d 747, 751-55

(9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Andrews*, 53 F.3d at 1043 (conflict with opinions of five non-examining mental health professionals, testimony of claimant and medical reports); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results).  Thus, case law requires not only an opinion from the consulting physician, but also substantial evidence (more than a mere scintilla, but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians.  *Andrews*, 53 F.3d at 1039.

Dr. Bostwick's conclusion that the MMPI test results on two occasions and the personality assessment inventory administered by Dr. Ridgeway indicated, at the very least, exaggerated responses (as opposed to a diagnosis of malingering) is supported by the record. (Tr. at 110, 216, 236.) He also noted the test results on the memory malingering scale (which did not indicate malingering) were specific to memory functioning and not specific for psychopathology. (Tr. at 293.)  Dr. Bostwick's conclusion as to her functional limitations, caused in large part by the agoraphobia and personality disorder for purposes of the step four / five analysis, also would be supported by the record, as evidenced by his explanation for each of those limitations at Tr. 296, the findings of examining physician Dr. McRae in January 2003 (inconsistencies in how her impairments may limit her but noting only a specific arithmetic limitation (Tr. at 183)), and consultant Dr. Brown's findings at Tr. 184-200, dated

February 2003. Dr. Brown noted Plaintiff would be able to work away from the public, sustain concentration on simple, repetitive tasks, and be productive. (Tr. at 200.)

Drs. Pollack and Rosekrans, following testing and examination of Plaintiff in March and August 2004 respectively, concluded Plaintiff was much more limited than found by Dr. Bostwick. (Tr. at 244, 219.) If disputed, the findings of an examining physician may be rejected only with "specific and legitimate" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ found with respect to the findings of Drs. Pollack and Rosekrans:

> Noteworthy are both Dr. Pollack and Dr. Rosekrans opinions on the Medical Source Statements. Both have reported more limitations than those assessed by Dr. Bostwick. Dr. Pollack reported that mental status examination was within normal limits except for difficulty with mathematics, she had an average range of intelligence, average range of memory, and was very slow and methodical in her approach to testing. Dr. Rosekrans also reported mental status examination was within normal limits, Trails A and B were within normal limits, and WAIS-II and WMS-II results indicated no problems with intelligence or memory. Both doctors reported that MMPI was invalid due to exaggeration and both doctors expressed concern regarding the claimant's credibility, but then went on to assess limits in keeping with her statements. Therefore, Drs. Pollack and Rosekrans statements regarding the claimant's ability to do work-like activities is rejected.

(Tr. at 27.) These reasons are specific and legitimate and supported by the record. Both Drs. Pollack and Rosekrans noted exaggeration as a result of administration of the MMPI-II. Their interpretation of the elevated F scale was different than that of Dr. Bostwick. Dr. Pollack suggested a cry for help (Tr. at 216) and Dr. Rosekrans did not mention the elevated score in his summary but did refer to secondary gain. (Tr. at 235.) Notwithstanding their interpretations, and consistent with Dr. Bostwick's opinion, Drs. Brown and McRae concluded Plaintiff's impairments did not prevent

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 7

her from working. (Tr. At 183, 200.) "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). It may be that a different result would be reached based on a new application with an amended onset date. However, that issue is not before this court.

2.  <u>Hypothetical</u>

In presenting his hypothetical to the vocational expert, the ALJ noted Plaintiff's mental limitations were related to social interaction and keeping pace or being persistent in work activities, as well as traveling to unfamiliar places, performing activities within a schedule, being on time without prompting from a supervisor, and from time to time but no more than twice a month, getting along with others in a work setting and completing work tasks calling for independent goal setting. (Tr. at 308, 310.) Based on those limitations, the vocational expert concluded Plaintiff would be unable to perform her past relevant work, but could perform other work which exists in significant numbers in the national economy. (Tr. at 312.) Thus, there was no error. Accordingly,

**IT IS ORDERED**:

1.  Plaintiff's Motion for Summary Judgment **(Ct. Rec. 12) is DENIED.**

2.  Defendant's Motion for Summary Judgment dismissal **(Ct. Rec. 15) is GRANTED;** Plaintiff's Complaint and claims are **DISMISSED WITH PREJUDICE.**

3. The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. The file shall be **CLOSED** and judgment entered for Defendant.

DATED April 20, 2006.

                S/ CYNTHIA IMBROGNO
            UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 9